IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROLAND KITTRELL, | : | |
|     Petitioner, | : | 1:15-cv-2401 |
| | : | |
| v. | : | |
| | : | Hon. John E. Jones III |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, PA STATE | : | |
| ATTORNEY GENERAL, | : | |
|     Respondents. | : | |

### MEMORANDUM

### February 20, 2018

Petitioner Roland Kittrell ("Petitioner" or "Kittrell"), a state inmate currently confined at the State Correctional Institution at Greene (SCI-Greene), Waynesburg, Pennsylvania, files the instant petition (Doc. 1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Kittrell seeks relief from the Judgment of Sentence entered in the Court of Common Pleas of Centre County on March 15, 2011, following his convictions for aggravated assault and simple assault, 18 PA.C.S.A. §§ 2702(a)(2), and (a)(1), respectively.

After thorough review of the petition and pertinent portions of the state court record, it is concluded that the state courts' decision concerning the adequacy of Kittrell's waiver of counsel colloquy raised in Grounds 2 and 11, resulted in a decision that is contrary to clearly established Federal law as determined by the

Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Accordingly, the petition will be granted on this ground.[1]

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The Superior Court of Pennsylvania set forth the facts relevant to the commission of the crimes, which occurred while Kittrell, a state inmate, was housed at the State Correctional Institution at Rockview ("SCI-Rockview"):

> On December 31, 2009, [Kittrell] assaulted Corrections Officer Lucas Nicholas from behind after Nicholas informed him he was subject to discipline for entering an unauthorized area. [Kittrell] struck Nicholas in the face with closed first [sic], knocking him to the ground. While on the ground, [Kittrell] kicked Nicholas. Corrections Officer Rodney Kauffman and Sergeant Timothy Watson witnessed the attack from a secure area and rushed to aid Nicholas. By the time Kauffman and Watson reached the scene of the attack, they found Nicholas face down in a pool of his own blood. When [Kittrell] refused to yield peacefully, Kauffman and Watson attempted to tackle and restrain [Kittrell]. A struggle ensued in which [Kittrell] punched Watson in the face and attempted to gouge his eye. [Kittrell] additionally grabbed Watson's genitals and attempted to rip them from Watson's body. While Kauffman was attempting to restrain [Kittrell's] legs, [Kittrell] kicked him in the shoulder. Despite [Kittrell's] strong resistance, the officers eventually subdued [Kittrell].
>
> [Kittrell's] attack caused Nicholas to suffer a broken nose, ear laceration, subdural hematoma, pulverized face, and severe bleeding. In fact, Nicholas' bleeding was so intense that he required transport to another hospital to control the bleeding. Watson suffered two corneal abrasions, broken blood vessels in his right eye, a hand puncture wound, and substantial pain in his groin.

---

[1] Because remand is warranted, discussion will be limited to the waiver of counsel colloquy and will not address additional grounds raised by Kittrell.

> The Commonwealth charged [Kittrell] with aggravated assault and simple assault.

(Doc. 17, pp. 45-46).

Criminal proceedings commenced in the Court of Common Pleas of Centre County. At arraignment, the court appointed Attorney Parviz Ansari ("Ansari") as counsel. (Doc. 30, pp. 12-13). At the inception of the January 24, 2011 trial, for the first time, Kittrell notified the court that he was dissatisfied with counsel. (*Id.* at 4-9). He cited, *inter alia*, counsel's failure to secure certain witnesses, obtain his complete medical record, and file a motion seeking a competency examination in light of his documented diagnoses for Depression, Schizophrenia, and Bipolar Disorder. (*Id.* at 5-12). He expressed a complete lack of confidence in counsel and emphasized that, if new court appointed counsel was not an option, he preferred to proceed *pro se*, despite his ignorance of the law. (*Id.*). A lengthy discussion concerning immediate procession to trial and available witnesses ensued. In the end, Kittrell was satisfied that all relevant witnesses were present and indicated that he was prepared to proceed to trial *pro se*. (*Id.* at 14-16). The trial court then conducted following colloquy:

> MR. ANSARI: JUDGE, I THINK THE COURT NEEDS TO DO A COLLOQUY FOR PRO SE, I BELIEVE THERE IS A COLLOQUY.
>
> MR. KITTRELL: RIGHT.

3

THE COURT: LET'S DO THAT AT THIS POINT. MR. KITTRELL, I NEED TO PUT YOU UNDER OATH.

MR. ANSARI: THERE IS A WRITTEN COLLOQUY.

MR. KITTRELL: COULD I JUST --

THE COURT: I'M ABOUT TO LET YOU BE YOUR OWN LAWYER, WHICH IS THE FIRST STEP AND THEN YOU CAN MAKE ANY OTHER MOTIONS THAT YOU WANT TO MAKE AFTER WE'VE EXCUSED MR. ANSARI.

MR. KITTRELL: OKAY.

THE COURT: WOULD YOU RAISE YOUR RIGHT HAND. WHEREUPON,

ROLAND KITTRELL, WAS CALLED AS A WITNESS AND HAVING BEEN DULY SWORN, WAS EXAMINED AND TESTIFIED AS FOLLOWS:

EXAMINATION

BY THE COURT: PLEASE STATE YOUR NAME FOR THE RECORD.

A. ROLAND KITTRELL.

Q. ALL RIGHT. MR. KITTRELL, YOU'RE HERE TODAY FOR A SCHEDULED JURY TRIAL ON CHARGES THAT STEM FROM CONDUCT AT THE STATE CORRECTIONAL INSTITUTION AT ROCKVIEW; DO YOU UNDERSTAND THAT?

A. YES.

Q. OKAY. AND MR. PARVIZ ANSARI IS YOUR COURT-APPOINTED ATTORNEY; DO YOU UNDERSTAND THAT?

A. YES.

Q. AND YOU'VE ASKED TO PROCEED PRO SE; IS THAT CORRECT?

A. YES.

Q. DO YOU UNDERSTAND THAT THE LAW IS A COMPLEX MATTER AND EVEN THOUGH YOU MIGHT HAVE SOME EXPERIENCE IN COURTROOM MATTERS –

A. I DON'T HAVE ANY EXPERIENCE, YOUR HONOR.

Q. OKAY. BEING A LAWYER IS YEARS AND YEARS OF TRAINING AND EDUCATION THAT YOU WON'T HAVE TO PROTECT YOURSELF; DO YOU UNDERSTAND THAT?

A. YES.

Q. AND YOU'LL BE HELD TO THE SAME STANDARDS AS SOMEBODY WITH A LAWYER; DO YOU UNDERSTAND THAT THE SAME RULES WILL APPLY TO YOU?

A. YES, I DO UNDERSTAND THAT, YOUR HONOR.

Q. CAN YOU TELL ME THE LAST GRADE OF SCHOOL THAT YOU FINISHED?

A. YOUR HONOR, ELEVENTH GRADE.

Q. AND CAN YOU READ AND WRITE ENGLISH?

A. NOT THE BEST BUT I CAN READ.

THE COURT: IS THERE ANYTHING ELSE, MS. HUNT, THAT YOU WANT ME TO ASK IN THE COLLOQUY?

MS. HUNT: NO, YOUR HONOR.

THE COURT:  ALL RIGHT.  THE COURT IS SATISFIED -- OH, I GUESS I NEED TO ASK THIS, MR. KITTRELL, DO YOU WISH TO PROCEED WITHOUT COUNSEL AND TO REPRESENT YOURSELF?

MR. KITTRELL:  YOUR HONOR, THIS IS THE WHOLE POINT RIGHT HERE IN WHICH I WAS HOPING TO GOD THAT IT WOULD BE GRANTED, THAT WAR IS -- YOU DON'T MIND IF I STAND UP; DO YOU?

THE COURT:  NO, YOU MAY.

MR. KITTRELL:  I WAS GOING TO REQUEST, YOUR HONOR, FOR ONE WHO WOULD SIT AT MY SIDE AND HELP ME IN THIS –

THE COURT:  STAND-BY COUNSEL IS WHAT WE CALL THAT.

MR. KITTRELL:  STAND-BY COUNSEL BUT HE'S AN INMATE AND HIS NAME IS MR. RICHARD MAYBERRY AND IS THAT POSSIBLE?

THE COURT:  I CANNOT -- NO, NOT UNLESS HE'S A LAWYER.

MR. KITTRELL:  NOT UNLESS HE'S A LAWYER.  SO IN THIS SITUATION, YOUR HONOR, CAN THERE BE A STAND-BY?

THE COURT:  MR. ANSARI.

MR. KITTRELL:  AND THAT WOULD BE -- OKAY, SO I'M PRO SE, HE'D BE STANDBY?

THE COURT:  CORRECT.

MR. KITTRELL:  OKAY.

> THE COURT: IS THAT YOUR DESIRE?
>
> MR. KITTRELL: YOUR HONOR, IT'S GOING TO HAVE TO BE.
>
> THE COURT: OKAY.
>
> MR. KITTRELL: IF I CAN'T GET ANY -- NO BETTER THAN THAT –
>
> THE COURT: ALL RIGHT.
>
> MR. KITTRELL: IT'S GOING TO HAVE TO BE.
>
> THE COURT: THEN THE ORDER WILL BE,
>
> AND NOW, THIS 23 DAY -- 24 DAY OF JANUARY, 12 2011, UPON MOTION OF ROLAND KITTRELL, THE COURT GRANTS HIS MOTION AND EXCUSES PARVIZ ANSARI AS HIS APPOINTED COUNSEL AND ORDERS THAT HE REMAIN AS STANDBY COUNSEL. BY THE COURT.
>
> ***
>
> MR. KITTRELL: ALL RIGHT, YOUR HONOR, I'M PRETTY MUCH READY.

(Doc. 30, pp. 16-21).

Following the one-day trial, a jury convicted Kittrell on the following counts: Count 1: Serious bodily injury to Lucas S. Nicholas ("Nicholas") in violation of 18 PA.C.S.A. § 2702(a)(2) (F1); Count 2: Bodily injury to Nicholas in violation of 18 PA.C.S.A. § 2702(a)(3) (F2); Count 4: Serious bodily injury to Timothy Watson ("Watson") in violation of 18 PA.C.S.A. §2702(a)(2) (F1); Count

7

5: Bodily injury to Nicholas in violation of 18 PA.C.S.A. §2701(a)(1) (M2); and Count 7: Bodily injury to Watson in violation of 18 PA.C.S.A. §2701(a)(1)(M2). (Doc. 17-1, p. 1, fn 1). "The Commonwealth promptly filed a notice of its intent to seek a mandatory minimum pursuant to 42 Pa.C.S.A. § 9714(a). On March 15, 2011, the court sentenced [Kittrell] to the mandatory minimum, an aggregate term of twenty five (25) to (50) years' incarceration. [Kittrell] filed post-trial motions on the same day, which the court denied on April 1, 2011. On April 8, 2011, the court appointed counsel in anticipation of an appeal. [Kittrell] timely filed a counseled notice of appeal on April 28, 2011. The court subsequently ordered [Kittrell] to file a concise statement of matters complaint on appeal pursuant to Pa.R.A.P. 1925(b), and [Kittrell] timely complied." (Doc. 17, p. 47) (footnote omitted). Kittrell raised approximately ten issues, including whether the trial court erred "in the conduct of a substandard Colloquy allowing Defendant to waive his right to counsel, including the failure to inquire as to Defendant's mental health status, any medication he may have been taking, and any mentally defective reasoning that he may have been suffering from." (Doc. 17, p. 31). On June 21, 2011, the trial court filed its opinion and order pursuant to PA.R.A.P. 1925(a) addressing Kittrell's matters complained of on appeal. (*Id.* at 35-43). On November 18, 2011, the Superior Court, in wholly relying on the trial court's

PA.R.A.P. 1925(a) opinion and order, concluded that the issues raised merited no relief. (*Id.* at 49-50). Thereafter, on March 28, 2012, the Supreme Court of Pennsylvania denied Kittrell's petition for allowance of appeal. (*Id.* at 53).

Kittrell timely filed a Post Conviction Relief Act ("PCRA") petition pursuant to 42 PA.C.S.A. §§ 9541-9546 on December 11, 2012, which was subsequently amended four times. (Doc. 17, pp. 55-58). On July 16, 2014, counsel filed a Fifth Amended Petition on Kittrell's behalf. (*Id.* at 55-58, 60). Included in the issues the PCRA court extracted from the multitude of petitions was whether the trial court abused its discretion in failing to conduct an adequate colloquy and, in doing so, forced Kittrell to proceed *pro se*. (*Id.* at 60-66). The court declined to revisit the issue of inadequacy of the colloquy, deeming it previously litigated during the direct appeal. (*Id.* at 63).

Kittrell appealed and, on July 24, 2015, the Superior Court of Pennsylvania found "[a]fter careful review of the certified record, as well as the briefs of the parties and applicable law, we agree with the PCRA court that Kittrell is not entitled to an evidentiary hearing or any other relief on his claim." (*Id.* at 74).

Thereafter, Kittrell timely filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## II. **DISCUSSION**

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). Petitioner's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *Cullen v. Pinholster*, 536 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). 28 U.S.C. § 2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
> ...
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. *See, e.g., Reed v. Farley*, 512 U.S. 339, 354 (1994).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (internal quotation marks and citation omitted). The burden is on Kittrell to prove entitlement to the writ. *Id.*

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A decision is an "unreasonable application" of federal law if the state court identified the correct governing legal rule but applied the rule to the facts of the case in an objectively unreasonable manner. *Renico v. Lett*, 559 U.S. 766, 773 (2010). A decision is based on an "unreasonable determination of the facts" if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In Grounds 2 and 11, Kittrell argues that "the trial court committed an abuse of discretion by allowing [him] to proceed *pro se* without a mental health evaluation" and allowing him to waive his right to counsel. (Doc. 1, pp. 6, 9; Doc.

11, pp. 7-11; Doc. 23, pp. 5-8). He contends that he reluctantly proceeded *pro se* when faced with the choices "given to him by the Court" of either continuing with counsel, Mr. Ansari, "whom he did not trust/or worked with" or proceeding *pro se*, "even though he was diagnosed as having mental infirmities and being on psychotropic drugs." (Doc. 23, pp. 5-6). "Through a mental health evaluation, the Court would have learned that the Petitioner has a documented and diagnosed history of mental health infirmities[,] was a psychiatric patient status [,] and under the influence of psychotropic drugs when he incompetently waived his right to counsel." (*Id.*at 6).

Pursuant to the Sixth Amendment, an accused shall have the right to assistance of counsel for his defense. U.S. Const. Amend. VI. A person accused of a crime, however, may choose to forgo representation. *Faretta v. California*, 422 U.S. 806, 821, 835 (1975) (holding that the right to self-representation is guaranteed by the Sixth Amendment to the United States Constitution when a valid waiver is made). While the Constitution "does not force a lawyer upon a defendant," *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942), it does require that any waiver of the right to counsel be clear and unequivocal and be knowing, voluntary, and intelligent. *See Faretta, 422 U.S.* at 835; *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

The trial judge has "the serious and weighty responsibility" of determining if a defendant's right to counsel has been waived, and prohibits forcing a defendant to trial absent a valid waiver of this Sixth Amendment right. *Johnson*, 304 U.S. at 465. "The fact that an accused may tell [a judge] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility." *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948). "A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is rendered." *Id.* There is no prescribed formula or script colloquy; the information to be conveyed to the defendant "depend[s], in each case, upon the particular facts and circumstances surrounding that case." *Iowa v. Tovar*, 541 U.S. 77, 92 (2004) (quoting *Johnson*, 304 U.S. at 464). "To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Von Moltke*, 332 U.S. at 724.

Significantly, courts must indulge every reasonable presumption against a waiver of counsel. *See Johnson*, 304 U.S. at 464. While there are competing

14

fundamental rights to counsel and to self-representation, "it is representation by counsel that is the standard, not the exception." *Martinez v. Court of Appeal,* 528 U.S. 152, 161 (2000).

In considering Kittrell's contention that the colloquy, recited in full, *supra*, was substandard, the trial court noted as follows:

> Appellant was appointed counsel by the Court on July 28, 2010, but on the morning of Appellant's trial, on January 24, 2011, Appellant requested that he be allowed to represent himself at trial. Thereafter, the Court placed Appellant under oath and colloquied Appellant with the Court's standard colloquy, beginning on page 16 of the trial transcript. Appellant appeared articulate and intelligent when speaking to the Court and he answered all questions in the colloquy in an appropriate manner. Therefore, the Court determined Appellant was competent to waive his right to counsel, and granted Appellant's request to proceed *pro se*. The Court appointed Appellant's court-appointed attorney, Mr. Ansari, to serve as Appellant's stand by counsel during trial.
>
> The Sixth Amendment to the United States Constitution and Article I, Section Nine of the Pennsylvania Constitution guarantee the right to self-representation when a [sic] Appellant makes a knowing and intelligent waiver to assistance of counsel. *See* PA CONST. amend. VI; *Commonwealth v. Houtz*, 856 A.2d 119, 122 (Pa. Super. Ct. 2004). In fact, "where a defendant knowingly, voluntarily, and intelligently seeks to waive his right to counsel, the trial court … must allow the individual to proceed *pro se*." *Commonwealth v. El*, 977 A.2d 1158, 1162-63 (Pa. 2009). In this case, Appellant insisted upon his constitutional right to self-representation, and he was properly colluquied by the Court with the Court's standard colloquy. The Court did not inquire into Appellant's mental health in the colloquy because no mental illness was apparent and none was raised by a party. Therefore, the Court maintains that its colloquy was clear and sufficient under the circumstances.

(Doc. 17, pp. 38-39). In affirming the trial court, the Superior Court concluded that the trial court opinion properly disposed of the issue. (*Id.* at 49).

The state court deemed Kittrell's waiver of counsel knowing, voluntary and intelligent because he "appeared articulate and intelligent when speaking to the Court and he answered all questions in the [Court's standard] colloquy in an appropriate manner." (*Id.* at 39). While this may be true, absent from the opinion is any discussion of whether Kittrell comprehended the nature of the charges, the statutory offenses, the range of allowable punishments, possible defenses to the charges or any mitigating circumstances. Also absent is any discussion of key factors including potential problems or obstacles that Kittrell may encounter, and any other facts essential to his broad understanding of the whole matter. Had the state court undertaken such an analysis, it would have recognized the deficient nature of the colloquy. It lacked enumeration of the nature of the charges and attendant statutory offenses. Glaringly omitted is discussion of the range of possible penalties, including Kittrell's exposure to Pennsylvania's three strikes statute which, in the matter *sub judice*, carried a mandatory minimum sentence of twenty-five years for a third or subsequent crime of violence under 42 PA.C.S.A. § 9714(d). There is no exploration or discourse concerning available defenses or potential mitigating factors. Also missing is any development of Kittrell's

knowledge of anticipated obstacles or the risks involved in navigating the trial waters without counsel.

The colloquy is clearly deficient in that the trial court failed to conduct a thorough, full and penetrating inquiry and failed to take all steps necessary to insure the fullest protection of the constitutional right to counsel. This Court is therefore compelled to conclude that the state court's determination resulted in a decision that was contrary to clearly established federal law as established by the Supreme Court of the United States.

## III. CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be granted.

A separate order will enter.